WO                                                                                                          KM

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melinda Gabriella Valenzuela, | No. CV 20-01801-PHX-MTL (MHB) |
| Plaintiff, | |
| v. | **ORDER** |
| Shawnna Anderson, et al., | |
| Defendants. | |

On September 14, 2020, Plaintiff Melinda Gabriella Valenzuela,[1] who is confined in the Arizona State Prison Complex-Florence, filed a Motion for Leave to File Pursuant to Court Order (Doc. 1) and an Application to Proceed In Forma Pauperis (Doc. 3) and lodged a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983.

The Court will grant the Motion to File, direct the Clerk of Court to file the Complaint, and dismiss the Complaint and this action pursuant to 28 U.S.C. § 1915(g).

**I.      Vexatious Litigant Orders**

Plaintiff has filed more than 200 cases in this Court since 2002. In response, the Court has issued multiple vexatious litigant injunctions restricting Plaintiff's ability to file in this Court. In a November 27, 2017 Order in CV 16-00951-PHX-NVW (MHB), the Court amended the current vexatious litigant injunction and set additional pre-filing requirements. Pursuant to the amended injunction entered against Plaintiff, before filing a

---

[1] Plaintiff has also filed Complaints under the names Enrique Gabrielle Mendez, Enrique Mendez-Valenzuela, and Quennell Glover. Plaintiff is biologically male, but identifies as female and refers to herself with feminine pronouns.

complaint, Plaintiff must obtain leave of the Court. Specifically, Plaintiff must file a Motion for Leave to File that conforms to the following provisions:

1. Plaintiff must file, with each new Complaint, documentation showing that Plaintiff has pursued available administrative remedies. The documentation must include copies of Plaintiff's grievances, responses to those grievances, and any appeals filed by Plaintiff as well as responses to those appeals.

2. If Plaintiff's claims are based on allegations that she has a serious medical condition or has suffered serious physical injuries, **Plaintiff must file, with the Complaint, documentation of her medical condition(s) and/or injuries that goes beyond her own allegations in the complaint. This evidence may be in the form of medical records or sworn affidavits from medical professionals that document the conditions or injuries alleged in the complaint.**

3. As stated in the 2004 Injunction, Plaintiff must also file a Motion for Leave to File which contains:

    (1) in the FIRST sentence, a request for leave to file;

    (2) in the SECOND sentence, a certification that the claims Plaintiff wishes to present are new claims never before raised and disposed of on the merits by any federal court.

    If any future Motion for Leave to File does not contain these two requirements, IN THE FIRST TWO SENTENCES, the Court will read no further, the Motion for Leave to File will be denied, and the case will be dismissed for failure to comply with this Order of this Court.

    (3) in the THIRD sentence, a short, plain statement of the harm Plaintiff has suffered and by whom such harm was inflicted. If the THIRD SENTENCE does not contain this requirement, and if the Court cannot determine what harm Plaintiff claims to have suffered and what Defendant allegedly committed the harm, the Court will read no further, the Motion for Leave to File will be denied, and the case will be

               dismissed for failure to comply with this Order of the Court.

4. Because Plaintiff has "three strikes," any in forma pauperis lawsuit she files must clearly, coherently, and credibly allege that Plaintiff is under imminent danger of serious physical injury. False allegations of imminent harm may subject Plaintiff to sanctions including further filing restrictions.

5. **If Plaintiff fails to comply with all the requirements of this Order in any filing, the Court will, without further notice, deny Plaintiff in forma pauperis status in that action and in all subsequent actions before this Court.**

CV 16-00951-PHX-NVW (MHB) (Doc. 88 at 2-4 (emphasis in original)).

Plaintiff has filed a Motion for Leave to File, copies of grievances related to her claims, and some medical documentation supporting her medical claims. Accordingly, the Court will grant the Motion to File and direct the Clerk of Court to file the lodged Complaint.

**II.     "Three Strikes Provision," 28 U.S.C. § 1915(g)**

The Prison Litigation Reform Act of 1995 (PLRA), enacted on April 26, 1996, provides that a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915 "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The imminent danger exception applies "if the complaint makes a *plausible allegation* that the prisoner faced 'imminent danger of serious physical injury' at the time of filing." *Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007). A prisoner barred from proceeding in forma pauperis pursuant to § 1915(g) may proceed under the fee provisions of 28 U.S.C. §§ 1911-14 applicable to everyone else. *Adepegba v. Hammons*, 103 F.3d 383, 388 (5th Cir. 1996).

. . . .

Plaintiff has filed at least three actions in this Court that were dismissed as frivolous, malicious, or as failing to state a claim. *See*, *e.g.*, CV 02-01670-PHX-JAT (DKD), CV 02-01725-PHX-JAT (DKD), and CV 02-01726-PHX-JAT (DKD). Accordingly, Plaintiff may not bring a civil action without complete pre-payment of the $350.00 filing fee and $50.00 administrative fee unless Plaintiff is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

In Count One of the Complaint, Plaintiff alleges that in January and February 2020, she reported to Defendants Bravo, Lopez, Castillo, Holmes, and Marco that she had chest pains, but Defendants "did not stop, answer, or get her care." Plaintiff further claims that on June 15, 2020, she told Defendants Castillo and Holmes that she had chest pains, and they "did not respond or get her care." In Count Two, Plaintiff alleges that from "April 2019 to present," Defendants LaPlume, Centurion, and Todd "have refused to treat her for her chest pains and pains in her stents that she has." Plaintiff states she has submitted multiple Health Needs Requests (HNRs), and "they have simply ignored her and done nothing." Plaintiff claims Defendant Lampshire told Plaintiff she "was not going to do anything for [Plaintiff]" and Defendants Wiegel and [illegible] "have done nothing when she reported chest pains to them."

Plaintiff's allegations in Count One relate to past events and do not show Plaintiff was in imminent danger of serious physical injury at the time she filed the Complaint.

Similarly, Plaintiff's allegations in Count Two that since April 2019, Defendants have "done nothing" in response to her reported chest pains, are contradicted by her HNRs and medical records and do not show she was in imminent danger at the time she filed the Complaint. Plaintiff's medical records reflect the following examinations in response to her complaints of chest pains:

(1) On May 1, 2019, Plaintiff was taken to medical for chest pain radiating down her left arm and abdominal pain. An EKG was done and Nurse Practitioner Hahn ordered multiple diagnostic tests to address Plaintiff's abdominal issues. The EKG did not show any abnormal findings. (Doc. 8 at 81.)

(2) On June 4, 2019, Plaintiff was seen by medical staff for chronic pain, but denied experiencing chest pain. (*Id.* at 64.) On June 5, 2019, Plaintiff received an ECG, which reported normal sinus rhythm. (*Id.* at 46.)

(3) On July 17, 2019, Plaintiff was seen by the medical department in response to an ICS for Plaintiff's report of chest pain. The medical notes state "no signs or symptoms of distress upon arriving to health unit, ambulated to health unit without assistance." (*Id.* at 27.) The notes further state: "Pt. states that [s]he did almost 200 push-ups day prior, which [s]he does not normally do, states [s]he felt nausea and vomiting. S1S2 present. ECG normal sinus rhythm." The notes further state: "discussed chest pain type symptoms related to anxiety and excessive use of upper chest muscles." (*Id.* at 33.)

(4) On July 30, 2019, an ICS was called was called when Plaintiff reported chest pains. The examining medical provider's notes state

> Upon arrival the inmate was resting in the medical office and in no apparent distress. The inmate was calm with slow even respirations and cooperative. Performed ECG which shows normal sinus rhythm, VSS/WNL, notified the on call provider who advised that the inmate was stable and able to return to [her] cell. This was explained to the inmate who was satisfied and felt comfortable to go back to bed.

(*Id.* at 91.)

(5) On August 17, 2019, an ICS was activated for Plaintiff's report of chest pain. The medical notes state Plaintiff walked to the medical unit without help. Plaintiff stated she had been having intermittent chest pain "8/10 since last night that originally started in [her] stomach and is now in the upper L chest" and that "last BM was 6-7 days ago." Plaintiff was "prescribed lactulose and docusate, which [inmate] has refused both medications 3x in the last week." (*Id.* at 36.) Plaintiff was given an EKG, which was normal. (*Id.* at 37.)

(6) Plaintiff was again seen for chest pains on September 9, 2019. The medical notes state Plaintiff was "ambulatory to medical," alert, able to communicate needs, vital signs were stable with

- 5 -

|   |   |   |
|---|---|---|
|   |   | the exception of blood pressure, and no acute distress was noted. (*Id.* at 72.) Plaintiff was given an EKG, which indicated a normal sinus rhythm. (*Id.*) |
|   | (7) | On January 14, 2020, Plaintiff was seen for complaints of, in part, "chest pain, abdominal and liver pains, hurt leg, requests crutches." (*Id.* at 18.) At the exam, Plaintiff reported "no longer having chest pain, less vomiting," and "agreed to wait for CT scan for further treatment of abdomen." (*Id.* at 18-19.) |
|   | (8) | On March 11, 2020, Plaintiff was seen for complaints of chest and abdominal pain. (*Id.* at 9.) The medical notes state that during the exam, Plaintiff did not mention chest or abdominal pains. Plaintiff was treated for swelling in her leg and issues related to bowel movements and her medications were adjusted. (*Id.* at 10.) |
|   | (9) | On April 12, 2020, Plaintiff complained of chest and abdominal pains. Pursuant to an internal regulation, inmates could not be brought to "HU for assessment unless ICS." (*Id.* at 2.) Plaintiff stated she did not want to discuss medical issues at the cell front. The nurse evaluating Plaintiff's HNR noted they would "try to get medication order to help bowel movement." (*Id.*) |

Plaintiff's medical records do not demonstrate that Defendants have "done nothing" in response to her complaints of chest pains, but rather show that she has been regularly examined for complaints of chest pain and provided with ECG or EKG tests. Further, the last grievance Plaintiff submitted in support of her Complaint is dated June 16, 2020, and Plaintiff provides no requests for care or medical documents beyond that date. Plaintiff did not file her Complaint until September 14, 2020, nearly three months after her last grievance. All of these facts indicate Plaintiff's medical concerns do not place her in imminent danger of serious harm.

The Court will deny Plaintiff's Application to Proceed In Forma Pauperis and will dismiss Plaintiff's Complaint and this action, without prejudice, pursuant to § 1915(g). If Plaintiff wants to reassert these claims in the future, she must prepay the entire $400.00 filing and administrative fees when she files her action.

. . . .

**III.    Motions**

On September 14, 2020, Plaintiff filed two Motions to Seal Documents (Docs. 5 and 7.) Plaintiff seeks to file under seal her HNRs and medical records. The Court will grant the Motions and order the Clerk of Court to file the lodged documents under seal.

**IT IS ORDERED:**

(1)    Plaintiff's Motion for Leave to File (Doc. 1) is **granted**; the Clerk of Court must file the lodged Complaint.

(2)    Plaintiff's Application to Proceed In Forma Pauperis (Doc. 3) is **denied**.

(3)    Plaintiff's Complaint and this action are **dismissed without prejudice**, pursuant to 28 U.S.C. § 1915(g). If Plaintiff wishes to reassert these claims in the future, she must prepay the entire $400.00 filing and administrative fees when she files her action.

(4)    Plaintiff's Motions to Seal Documents (Docs. 5 and 7) are **granted**. The Clerk of Court must **file under seal** the lodged documents.

(5)    The Clerk of Court must enter judgment accordingly and close this case.

Dated this 29th day of October, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge

- 7 -